## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) IVAN XAVIER BELL, | |
| Plaintiff, | |
| v. | Case No.: |
| (1) CITY OF STILLWATER, OKLAHOMA, | ATTORNEY LIEN CLAIMED |
| (2) SHERIFF JOE HARPER, Payne County Sheriff, in his Official Capacity, | JURY TRIAL DEMANDED |
| (3) JIMMY KNOX, | |
| (4) BRETT MOORE, | |
| (5) CHARLES RIVAS, | |
| Defendants. | |

## COMPLAINT

**COMES NOW**, Ivan Xavier Bell, ("Plaintiff" or "Mr. Bell"), and for his causes of action against the above-named Defendants, alleges and states the following:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a resident of Tulsa County, Oklahoma. The causes of action in this matter are based on violations of Mr. Bell's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

2.      Defendant City of Stillwater, Oklahoma ("City") is a municipality located in Payne County, Oklahoma. The City provides and employs the Stillwater Police Department ("SPD"). The City also provides and operates the Stillwater Municipal Jail ("Jail")

3.      Defendant Joe Harper is sued purely in his official capacity as Payne County Sheriff. It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim

1

against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014). Thus, in suing the Payne County Sheriff in his official capacity, Plaintiff has brought suit against the County/PCSO.

4.     Defendant Jimmy Knox ("Officer Knox") was at all pertinent times, an SPD officer, employed by the City. At all pertinent times, Officer Knox was acting within the scope of his employment and under color of State law. Based upon information and belief, Officer Knox was a resident of Payne County, Oklahoma at the time of the incidents described herein. Officer Knox committed underlying violations of Mr. Bell's constitutional rights, explained below in more detail.

5.     Defendant Brett Moore ("Detective Moore") was at all pertinent times, an SPD detective, employed by the City. At all pertinent times, Detective Moore was acting within the scope of his employment and under color of State law. Based upon information and belief, Detective Moore was a resident of Payne County, Oklahoma at the time of the incidents described herein. Detective Moore committed underlying violations of Mr. Bell's constitutional rights, explained below in more detail.

6.     Defendant Charles Rivas ("Officer Rivas") was at all pertinent times, an SPD officer, employed by the City. At all pertinent times, Officer Rivas was acting within the scope of his employment and under color of State law. Based upon information and belief, Officer Rivas was a resident of Payne County, Oklahoma at the time of the incidents described herein. Officer Rivas committed underlying violations of Mr. Bell's constitutional rights,

explained below in more detail.

7.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and/or Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

8.    The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

9.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

10.    Paragraphs 1-9 are incorporated herein by reference.

### A. Facts Specific to Mr. Bell

11.    On February 13, 2024, Plaintiff checked into the Fairfield Marriot ("Hotel") in Stillwater, Oklahoma.

12.    Checkout at the Hotel was 11 A.M. on the following day, February 14, 2026.

13.    At 11:25 A.M. on the 14th, less than thirty minutes after checkout time, the Hotel Manager, Asa McCurry, called the Stillwater Police Department ("SPD") to remove Mr. Bell from the premises.

14.    SPD Officer James Droescher ("Officer Droescher") responded to this call.

3

15.    Officer Droescher and Ms. McCurry approached Mr. Bell's room, 214, and attempted to speak with him regarding the checkout time.

16.    Plaintiff, experiencing a mental health episode at this time, did not know that Droescher was an SPD officer. That is, at the time of this encounter, Plaintiff was in the midst of a cognitive impairment that affected his ability to discern the identity of those he encountered. Thus, when Officer Droescher identified himself from the other side of Plaintiff's locked hotel room door, Plaintiff did not believe Officer Droescher's statements that he was a police officer. Officer Droescher corroborates this in his Probable Cause Affidavit (PC Affidavit) wherein he states, "Xavier ... stated that he did not believe I was a real police officer," and that "Xavier asked for my badge number, and after I provided it told me that it was not a real badge number." Prior to the arrival of additional SPD personnel, Officer Droescher again attempted to speak to Mr. Bell, but "he did not believe [Droescher] was a real police officer."

17.    After attempts to unlock the door forcefully, there was ultimately a request for SPD officers of the Special Operations Team ("SOT") to take over the situation. Upon information and belief, pursuant to SPD SOT Policy and Procedure only the Chief of Police, or in his absence, his designee, could activate the SOT.

18.    The SOT team consisted of several member of SPD staff, including Officers Knox and Rivas, and Detective Moore.

19.    Upon arrival, the SOT Team knocked on the Room 214's door and did not receive a response.

20.    Then, Officer Knox deployed chemical agents into the room, even though Plaintiff was known to be alone in the room and, at this time, was simply not responding to officers' statements. The SOT team possessed a door ram, but opted for chemical agents instead.

21.    Upon the first use of the chemical agents, officers could hear Plaintiff coughing.

22.    After waiting fifteen (15) minutes and giving announcements for Mr. Bell to come out of the room, Officer Knox again deployed chemical agents into Room 214.

23.    The SOT officers again heard Plaintiff coughing.

24.    After waiting another fifteen (15) minutes, the officers decided to break the door using the door ram.

25.    Once the officers breached the door, they could see Plaintiff standing, naked, in an otherwise non-threatening manner.

26.    It was at this time that Detective Moore used an Electronic Control Device ("taser") on Plaintiff, despite Plaintiffs non-threatening state. At most, Plaintiff was passively resisting officers' commands.

27.    Despite this, while Detective Moore was actively tazing Plaintiff, Officer Rivas tackled Mr. Bell to the floor. Plaintiff rolled onto his stomach. Officer Rivas was on top of Plaintiff near his head, and two other officers were at either of Plaintiff's arms. Plaintiff purportedly then "was attempting to posture up onto his hands and knees," despite that he was still being tazed at this point.

28.     Officer Rivas then punched Plaintiff in the face, twice, and knocked Plaintiff unconscious.

29.     While Plaintiff was unconscious, the officers handcuffed him.

30.     Plaintiff was then transferred to the Stillwater Municipal Jail ("City Jail").

31.     SPD booked Plaintiff into the City Jail at approximately 2:16 P.M. on February 14, 2026 on charges of: 1) Trespassing; 2) Obstruction; and 3) Assault and Battery on a Police Officer.

32.     Plaintiff was then released to the Payne County Jail ("County Jail") on February 15, 2024 at approximately 10:17 A.M. The Payne County Jail is provided, operated, and controlled by the Payne County Sheriff's Office ("PCSO").

33.     Upon information and belief, Plaintiff then remained in the County Jail for approximately nine (9) days without/with little access to food and water.

34.     Indeed, on March 23, 2024, Plaintiff was released from the County Jail on a Personal Recognizance Bond ("OR Bond").

35.     He was then brought to the Stillwater Medical Center ("SMC"), accompanied by the SPD Police Chief, for chief diagnoses of sepsis, hypothermia, altered mental status, significant electrolyte abnormalities, and acute kidney injury.

36.     Because of this, SMC staff advised for Plaintiff's transfer to OSU Medical Center for nephrology and further care.

37.     LifeNet transferred Plaintiff from SMC in Stillwater to OSU Medical Center in Tulsa.

38.    LifeNet documentation noted that Plaintiff arrived at SMC with a core temperature of 86.5 degrees Fahrenheit, with critical lab values including hyperkalemia, hypernatremia, increased Hemoglobin and Hematocrit (H/H), and an elevated white blood cell count. When LifeNet arrived to transfer Plaintiff, he could not speak due to hyperventilation. During the transport, Plaintiff's blood pressure dropped to 70/30 mmHg.

39.    Upon arrival to the OSU Medical Center ("OSUMC") in Tulsa, they noted the following diagnoses: Acute hypernatremia; Hypothermia; Hyperchloremia; Hyperglycemia; Thrombocytopenia (HCC); Leukocytosis; Elevated INR; Elevated liver enzymes; Rhabdomyolysis; Lactic acidosis; Hypermagnesemia; High anion gap metabolic acidosis; and Acute metabolic encephalopathy.

40.    OSUMC also reported that, at the County Jail, *Plaintiff had been placed in isolation for three (3) days without food or water and was subsequently found unresponsive*.

41.    Upon information and belief, while housed at the Payne County Jail, Plaintiff was subjected to conditions of confinement which resulted in severe dehydration and other emergent medical conditions.

42.    Upon information and belief, this was carried out deliberately by the County Jail and its employees as part of the County's policies and practices at the County Jail.

43.    Plaintiff was ultimately diagnosed, *inter alia*, with liver cirrhosis and diabetes by OSUMC. Both conditions contributed to his worsening state while inside the County Jail, where Mr. Bell did not have accessed, and upon information and belief, was denied food, water, medicine, and medical care.

44.    He stayed at OSUMC for approximately seventeen (17) days, from February 23, 2024 till March 11, 2024.

**B. A Persistent Policy and Custom of Excessive Force by SPD**

45.    There is an affirmative link between the aforementioned excessive force utilized by Officers Knox and Rivas, and Detective Moore, and policies, practices and/or customs which the Stillwater Police Department promulgated, created, implemented and/or possessed responsibility for.

46.    On information and belief, the SPD failed to adequately train and supervise its officers, including Officers Knox and Rivas, and Detective Moore, with respect to, *inter alia*: use of force, de-escalation, the use of force continuum, appropriate use of force, use of force on a citizen/inmate subdued by a taser, and use of force on individuals who are experiencing a mental health crisis or are otherwise impaired.

47.    The SPD knew, must have known or should have known that, due to the obviously inadequate training and supervision, that unconstitutional excessive use of force by SPD personnel, including Officers Knox and Rivas, and Detective Moore, was probable, but failed to take reasonable measure to alleviate the risk of harm.

48.    The recent case of *Hosterman v. City of Stillwater, Okla.*, et al., Case No. 24-CV-976-SLP (W.D. Okla.) illustrates such inadequate training and supervising, and the affirmative link between SPD's policies, practices, and/or customs and the excessive for used by Officers Knox and Rivas, and Detective Moore here.

49.    That is, in *Hosterman*, SPD is acknowledged to have had in existence a policy, practice, and/or custom of excessive use of force on pretrial detainees in the form of forcible strip searches for what was, at most, passive resistance.

50.    Here, Mr. Bell experienced excessive force used upon him for what was, at most, passive resistance, similar to the excessive force which Ms. Hosterman experienced.

## C. A Persistent Policy and Custom of Deliberate Indifference by PCSO

51.    The deliberate indifference to Mr. Bell's serious medical needs and his safety, as summarized *supra*, was in furtherance of and consistent with: a) policies, customs, and/or practices which PCSO promulgated, created, implemented or possessed responsibility for the continued operation of.

52.    To the extent that no single officer or professional violated Mr. Griego's constitutional rights while he was housed in the Payne County Jail, the County/Sheriff are still liable under a theory of a systemic failure of policies and procedures. That is, there were such gross deficiencies in medical procedures, staffing and facilities and procedures that Mr. Bell was effectively denied constitutional conditions of confinement.

53.    Upon information and belief, there exists a systemic failure of policies and procedures by PCSO at the Payne County Jail with respect to medical procedures, staffing and facilities and other procedures applicable to Mr. Bell.

54.    That is, the systemic failure of policies and procedures by PCSO led to Mr. Bell's severe, emergent, and unconscionable medical deterioration and subsequent transfer to multiple medical facilities.

55.    Upon information and belief, PCSO/the County failed to ensure that the

County Jail was properly staffed, jailers were adequately trained, and that jailers conducted their required checks, especially on inmates, like Mr. Bell, who had serious medical/mental health needs and/or required close monitoring.

56.     Upon information and belief, PCSO/the County adopted a punitive policy of isolated confinement without access to food or water for inmates like Mr. Bell.

57.     Upon information and belief, The County/PCSO have had opportunities to increase funding, supervision and training which would allow it to properly staff and address these systemic deficiencies, including severe deficiencies in its medical delivery system, that plague the Jail. Its failure to take reasonable measures to alleviate known and substantial risks to inmates like Mr. Bell constitutes deliberate indifference at the municipal level.

58.     These systemic deficiencies in PCSO/the County's policies and procedures at the County Jail were the moving force behind his injuries as alleged herein.

## CAUSES OF ACTION

### VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES
### (42 U.S.C. § 1983)

59.     Paragraphs 1-58 are incorporated herein by reference.

**A.     Underlying Violations of Constitutional Rights/Individual Liability**
      **i.     Excessive Force**

60.     At the time of the complained of events, Mr. Bell, as non-threatening arrestee, had a clearly established constitutional right under the Fourteenth and/or Fourth Amendment to be secure in his person and free from objectively unreasonable seizure through excessive force to injure him and his bodily integrity.

61.    Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

62.    In the totality of the circumstances, at the time that the violent force as used by Officers Knox and Rivas, and Detective Moore, Mr. Bell was: 1) unarmed; 2) handcuffed; 3) not fleeing; and 4) posed no threat to himself, the officers, or anyone else.

63.    The use of violent force by Officers Knox and Rivas, and Detective Moore under the circumstances described herein was excessive and objectively unreasonable.

64.    Officers Knox and Rivas, and Detective Moore applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing him serious bodily injures, as well as mental pain and anguish.

65.    As a direct proximate result of Officers Knox and Rivas, and Detective Moore's unlawful conduct, Mr. Bell has suffered actual physical injuries, medical expenses (past and future), mental and physical pain and suffering and other damages and losses as described herein entitling him to recover compensatory and special damages in amounts to be determined at trial.

## ii.    Deliberate Indifference

66.    Upon information and belief, PCSO staff knew there was a strong likelihood that Mr. Bell was in danger of serious harm.

67.    As described *supra,* Mr. Bell had serious, emergent, and ongoing medical issues that were known and obvious to the PCSO employees/agents. It was obvious that Mr. Bell needed immediate and emergent evaluation and treatment from a physician, but such services were denied, delayed and obstructed. PCSO employees/agents disregarded the

11

known, obvious and substantial risks to Mr. Griego's health and safety until he was found unresponsive by PCSO staff.

68.    Upon information and belief, over a span of nine (9) days, Mr. Bell was encountered by numerous PCSO employees/agents who witnessed his dire and worsening state, but not one of them did a single thing for Mr. Bell.

69.    As a direct and proximate result of this deliberate indifference, as described above, Mr. Bell experienced unnecessary physical pain, a worsening of his conditions, severe emotional distress, mental anguish, a loss of quality and enjoyment of life, terror, degradation, oppression, humiliation, and embarrassment.

70.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to pecuniary and compensatory damages.

**B.    Municipal/"*Monell*" Liability**

**i.    Against City of Stillwater, Oklahoma)[1]**

71.    Paragraphs 1-70 are incorporated herein by reference.

72.    The aforementioned acts of excessive force by Officers Knox and Rivas, and Detective Moore are causally connected with customs, practices, and policies which the City of Stillwater/SPD promulgated, created, implemented and/or possessed responsibility for.

73.    On information and belief, the SPD failed to adequately train and supervise its officers, including Officers Knox and Rivas, and Detective Moore, with respect to, *inter*

---

[1]    "A municipal entity may be liable where its policy is the moving force behind the denial of a constitutional right, *see Monell* [*v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694 (1977), 98 S.Ct. 2018].

*alia*: use of force, de-escalation, the use of force continuum, use of force on a citizen/inmate subdued by a taser, and use of force on individuals who are experiencing a mental health crisis or are otherwise impaired.

74.     SPD knew, must have known or should have known that, due to the obviously inadequate training and supervision, that unconstitutional excessive use of force by SPD personnel, including Officers Knox and Rivas, and Detective Moore, was probable, but failed to take reasonable measure to alleviate the risk of harm.

75.     The City of Stillwater/SPD, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Mr. Bell's, health and safety.

76.     Further, upon information and belief, the decision to activate the SOT was made by the Chief of Police, or his designee.

77.     Therefore, the City of Stillwater/SPD, through SPD officials, were personally involved in the subsequent uses of excessive force against Plaintiff.

78.     The City of Stillwater/SPD is thus liable because officials with final policymaking authority approved of and subsequently cooperated in the excessive uses of force against Plaintiff. This policy and action — SOT's deployment and subsequent uses of force — constituted actions by an authority with final policymaking authority pursuant to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

79.     As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Bell suffered injuries and damages as alleged herein.

ii.    Against Joe Harper, in his Official Capacity

80.    PCSO is charged with implementing and developing the policies of with respect to the medical and mental health care of inmates at the Payne County Jail, in addition to the responsibility to adequately train and supervise its employees.

81.    There is an affirmative causal link between the aforementioned acts and/or omissions of PCSO staff, as described above, in being deliberately indifferent to Mr. Bell's serious medical needs, health, and safety, and the above-described customs, policies, and/or practices carried out by PCSO.

82.    To the extent that no single officer or professional violated Mr. Bell's constitutional rights while in the County Jail, PCSO is still liable under a theory of a systemic failure of policies and procedures as described herein. There were such gross deficiencies in medical procedures, staffing and facilities and procedures that Mr. Bell was effectively denied constitutional conditions of confinement.

83.    PCSO knew or should have known, either through actual or constructive knowledge, or it was obvious, that these policies, practices and/or customs posed substantial risks to the health and safety of inmates like Mr. Bell.  Nevertheless, PCSO failed to take reasonable steps to alleviate those risks, in deliberate indifference to inmates', including Mr. Bell's, serious medical needs.

84.    PCSO tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein.

85.    Additionally, PCSO has maintained a healthcare delivery system at the Payne County Jail that has "such gross deficiencies in staffing, facilities, equipment, or procedures

14

that the inmate is effectively denied access to adequate medical care." *Garcia v. Salt Lake County,* 768 F.2d 303, 308 (10th Cir. 1985).

86.    There is an affirmative causal link between the aforementioned customs, policies, and/or practices and Mr. Bell's injuries and damages as alleged herein.

**WHEREFORE,** based on the foregoing, Plaintiff prays this Court grant the relief sought, including but not limited to actual and compensatory damages, and punitive damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

**SMOLEN & ROYTMAN**

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Bryon D. Helm, OBA #
Robert M. Blakemore, OBA #18656
701 S. Cincinnati Avenue
Muskogee, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
*Attorneys for Plaintiff*